UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| DELMAR FINANCIAL COMPANY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18CV00208 AGF |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's motion to dismiss Count II (Breach of the Implied Duty of Good Faith and Fair Dealing) and Count III (Negligence) of Plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion will be granted.

## BACKGROUND

Plaintiff Delmar Financial Company ("Delmar"), a Missouri company, is a mortgage lender that originates loans and holds loan servicing rights. Defendant Ocwen Loan Servicing, LLC ("Ocwen"), a mortgage loan servicer, is incorporated in Delaware, with its principal place of business in Florida. On January 1, 2014, Delmar and Ocwen entered into a Subservicing Agreement ("Agreement") under which Ocwen was to act as Delmar's subservicer, providing services such as collecting payments from borrowers and remitting those payments to secondary market investors. Under the Agreement,

Ocwen was required to act "consistent with . . . Accepted Servicing Practices, Applicable Law and the Approval Matrix." ECF No. 5-1 at 18.

The Agreement also stated that Ocwen "shall comply in all material respects with Applicable Law and employ Accepted Servicing Practices except and to the extent that such practices conflict with the requirements of this Agreement." *Id.* at 20. "Accepted Servicing Practices" is defined by the Agreement as:

> With respect to any Portfolio Loan or REO Property, (i) the Fannie Mae Guides, (ii) any applicable mortgage insurer guides, (iii) the VA Regulations applicable for any VA Mortgage Loan and FHA regulation applicable for any FHA Mortgage Loans, and (iv) to the extent not inconsistent therewith, those mortgage servicing practices of mortgage lending institutions which service mortgage loans of the same type as Portfolio Loan or REO Property in the jurisdiction where the related Mortgaged Property is located, exercising a reasonable standard of care in performing those practices.

*Id.* at 5. The Agreement included an indemnification provision which stated:

> [T]he Subservicer shall defend and indemnify [Delmar] . . . against any and all Liability sustained by [Delmar] . . . arising from the failure of the Subservicer to perform its duties under this Agreement or the Subservicer's breach of the terms of this Agreement, including taking any action or failing to take any action in accordance with the Approval Matrix.

*Id.* at 59. The indemnification provision also provided that Ocwen would indemnify Delmar for liability resulting from "the assertion of any claim or the commencement of any proceeding or investigation by any Person not a party hereto . . . subject to [certain] terms and conditions." *Id*. The Agreement provided that it would be construed in accordance with New York law. *Id.* at 80.

In its complaint, Delmar alleges that Ocwen "failed to perform in material respects obligations set forth in the [Agreement]." ECF No. 5 at 3. Delmar outlines a number of

2

acts that, according to the complaint, constituted a breach of contract, a breach of the implied duty of good faith and fair dealing, and/or negligence, as follows. Ocwen used REALServicing as its loan servicing platform, and that platform lacked "the basic system architecture and design necessary to properly service loans," which caused "great disruption" and "impacted Delmar's loans." *Id.* Ocwen's failure to initiate foreclosure or convey property in a timely manner led to interest curtailments, additional property damage, and additional preservation costs. Ocwen also performed unnecessary repair work, and it made mistakes with respect to various USDA Rural Development loans that have caused Delmar to sustain losses. And Ocwen "failed to follow the conventional and government loan claim process in a timely and accurate manner." *Id.* at 4.

The complaint further alleges that Ocwen failed to adhere to Governmental National Mortgage Association's ("Ginnie Mae") program requirements by placing custodial funds into interest bearing accounts, which caused Ginnie Mae to send Delmar a Pre-Penalty Notice. As a result, Delmar will allegedly need to retain and pay an attorney to file a response or risk paying a penalty. The complaint states that Ocwen made assurances to Delmar that it would pay the fine, but has not done so. The complaint also states that, on several occasions, Delmar was charged for items that Ocwen admitted were caused by its fault, and although Ocwen agreed to indemnify Delmar, it has not done so.

The complaint alleges that, in one instance, a borrower on a loan subserviced by Ocwen claimed that Ocwen erred in its duties by failing to properly apply reinstatement funds to cure a default. The borrower brought suit against Ocwen, and Ocwen sought to

3

shift liability and payment of legal fees to Delmar, despite the indemnification provision in the Agreement requiring Ocwen to "defend and indemnify Delmar against any and all liability arising from Ocwen's failure to perform its duties." *Id.* at 5.

Delmar asserts that Delmar submitted two claims for indemnification to Ocwen in April 2017, which Ocwen accepted as "test claims" to be used as a template for future claims. Delmar states that it has yet to receive payment on these two claims. Delmar additionally filed 14 claims, none of which have been indemnified by Ocwen. The total of the unpaid claims to date is $274,000. Delmar alleges a total of $950,000 in losses as a result of Ocwen's conduct.

In Count I of the three count complaint, Delmar claims that Ocwen breached the Agreement by, "among other things, failing to comply with Accepted Servicing Practices, failing to comply with Agency regulations and standards and being unable to even board new loans in certain states in which Delmar does business." *Id.* at 7. In Count II, Delmar claims that Ocwen breached an implied duty of good faith and fair dealing by "its conduct herein." *Id.* at 8. And in Count III, Delmar claims that Ocwen's conduct constituted a breach of its duty of care to Delmar and was therefore negligent. *Id.* at 9.

## ARGUMENTS OF THE PARTIES

Ocwen asserts, and Delmar does not dispute, that New York law governs this case. With respect to Count II, Ocwen argues that, under New York law, a claim for breach of the implied duty of good faith and fair dealing cannot be asserted along with a breach of contract claim where both claims are predicated on the same alleged conduct. Additionally, Ocwen argues that it does not owe any duty to Delmar outside of what is in

the Agreement, and that Delmar has not alleged any facts which would give rise to an extra-contractual duty of good faith and fair dealing. Ocwen points to New York cases that explicitly state that loan servicers do not owe any extra-contractual duties to contractual counterparties.

With respect to Count III, Ocwen argues that Delmar cannot assert a negligence claim against Ocwen because (1) Delmar's negligence claim is barred by the economic loss doctrine, and (2) the negligence claim is duplicative of the breach of contract claim.

In response to Ocwen's motion to dismiss Count II, Delmar argues that it has alleged wrongs that are extraneous to the terms of the Agreement. Delmar posits that Ocwen, in its capacity as a loan servicer, has a duty to follow applicable laws, and this duty arises separate and apart from any contractual duties. Delmar also argues that Owen assumed a duty to act in good faith and fair dealing as a result of the various representations it allegedly made to Delmar after Ocwen entered into the Agreement. Specifically, Delmar points to Ocwen's statements that it would indemnify Delmar for certain charges and fines as representations that give rise to a duty extraneous to the Agreement. Delmar argues that Ocwen's failure to comply with representations and promises it made after signing the Agreement are extraneous to any terms or duties under the Agreement itself.

With respect to Count III, Delmar argues that its negligence claim is not duplicative because "negligent performance of a contract may give rise to a claim sounding in tort as well as one for breach of contract." *Id.* at 10. Delmar asserts that loan servicers owe a professional duty, independent of any contract, to exercise reasonable

5

care in the performance of their work, which Ocwen failed to do. In response to the case law cited by Ocwen to the effect that loan servicers do not owe extra-contractual duties to their contractual counterparties, Delmar argues that loan servicers are not "in all instances prohibit[ed] . . . from being sued in tort." *Id*. Lastly, Delmar argues that its negligence claim is not barred by the economic loss doctrine because this case fits within an exception to the doctrine under New York law. Delmar requests leave to amend its complaint to include an intentional tort in the event this Court dismisses either or both Count II and Count III.

In reply, Ocwen reasserts its original arguments and objects to Delmar's request for leave to amend its complaint on the grounds that Delmar has not provided a proposed amended complaint or otherwise complied with Local Rule 7-4.01.

## **DISCUSSION**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers "only labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. As the parties acknowledge, New York substantive law governs this case.

New York law recognizes the implied covenant of good faith and fair dealing as a "contractual obligation of universal force which underlies all written agreements." *Brassil v. Maryland Cas. Co.*, 104 N.E. 622, 624 (N.Y. 1914). However, a claim that the defendant breached the covenant of good faith and fair dealing cannot be sustained when

6

"it is based on the same facts as those underlying" the plaintiff's breach of contract claim. *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 452 (S.D.N.Y. 2014). In order for a claim of breach of the implied covenant of good faith and fair dealing to survive a motion to dismiss, a plaintiff must "alleg[e] conduct that subverts the contract's purpose without violating its express terms." *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 8 Civ. 9116 (PGG), 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009). Thus, when a plaintiff claims both breach of contract and breach of the implied covenant of good faith and fair dealing that arise out of the same operative facts, courts routinely dismiss the latter as duplicative. *Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13 Civ. 3956, 2014 WL 837050, at *6 (S.D.N.Y. Mar. 3, 2014).

This Court concludes that, based on the facts alleged in the complaint, Count II is duplicative of Delmar's breach of contract claim. A breach of the implied covenant of good faith and fair dealing involves conduct which, while itself does not constitute a breach of the contract, defeats the purpose of the contract. *See, e.g.*, *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 501 (N.Y. 2002) (holding that the plaintiffs sufficiently pled a breach of the implied covenant of good faith and fair dealing by alleging that the defendant, which contracted to convert its building into a cooperative, rejected bona fide purchase offers from prospective tenants). That is not the case here. The conduct which Delmar alleges gives rise to a breach of an implied covenant of good faith and fair dealing, including the alleged failure to follow applicable laws, is subsumed under its breach of contract claim, and properly dismissed as redundant. *See N.Y. State Workers' Comp. Bd. v. Program Risk Mgmt., Inc.*, No. 3203–13, 2015 WL 5774443, at

*7 (N.Y. Sup. Ct. Sept. 21, 2015), *aff'd as modified on other issues*, 55 N.Y.S.3d 790 (N.Y. App. Div. 2017).

Under New York law, to sustain a claim of negligence in an action that also claims a breach of contract, the defendant must owe the plaintiff a legal duty that is "independent of [any] contractual obligation." *Bank Leumi Tr. Co. of N.Y. v. Block 3102 Corp.*, 580 N.Y.S. 2d 299, 300-01 (N.Y. App. Div. 1992); *see also Bouquet Brands Div. of J & D Food Sales, Inc. v. Citibank, N.A.*, 470 N.Y.S.2d 733, 734 (N.Y. App. Div. 1983) ("A tort action may accompany one for breach of contract only where the contract creates a relation out of which springs a duty, independent of the contract obligation, and that independent duty is breached."). Under New York law, however, professional loan servicers do not owe an independent duty of care to loan providers by virtue of being loan servicers, especially when both parties involved are, as here, sophisticated financial entities. *See, e.g., Commerce Bank v. U.S. Bank Nat'l Ass'n*, No. 4:13-CV-00517-BCW, 2015 WL 9488397, at *3-4 (W.D. Mo. Sept. 30, 2015) (applying New York law in dismissing negligence claim against a loan servicer); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 194 (S.D.N.Y. 2011) (same).

As noted above, Delmar also asserts that Ocwen assumed extra-contractual duties through post-contractual assurances and promises to perform in accordance with the Agreement. Delmar has not alleged that Ocwen's assurances and promises constituted a separate oral contract with new consideration, and "[a]n express promise to perform an existing duty is not valid consideration." *See Tender Loving Care Agency, Inc. v. Hladun*, 488 N.Y.S.2d 790, 791 (N.Y. App. Div. 1985). Therefore, Ocwen's promises to

8

perform obligations already existing under the Agreement do not constitute the assumption of an extra-contractual duty. Count III, thus, fails to state a claim upon which relief can be granted.

With respect to Delmar's request for leave to amend its complaint, Delmar is free to seek to amend before the deadline for doing so that will be set forth in the Case Management Order which will be issued following the scheduling conference in this case. Any motion for leave to amend must be accompanied by the proposed amended complaint.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss Count II and Count III of Plaintiff's complaint is **GRANTED**. (ECF No. 11.)

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 25th day of April, 2018.