UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DELMAR FINANCIAL COMPANY, ) ) Plaintiff, ) ) v. ) ) OCWEN LOAN SERVICING, LLC, ) ) Defendant. ) | Case No. 4:18CV00208 AGF |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's motion to dismiss counts II-IV of Plaintiff's amended complaint for failure to state a claim pursuant to Rule 12(b)(6). ECF No. 51. For the reasons set forth below, the motion will be granted in part and denied in part.

### BACKGROUND

Plaintiff Delmar Financial Company (Delmar) is a mortgage lender. Defendant Ocwen Loan Servicing (Ocwen) is a mortgage loan servicer. In January 2014, Delmar and Ocwen entered into a Subservicing Agreement, governed by New York law, pursuant to which Ocwen was to act as Delmar's subservicer, providing loan servicing support such as collecting payments from borrowers and remitting those payments to secondary market investors. The Agreement contains numerous representations and warranties by which Ocwen affirmed its ability to perform its obligations thereunder, i.e., its

operational capabilities, its good standing, compliance with applicable laws, and the absence of litigation and other impediments to performance.

In December 2017, Delmar filed a lawsuit alleging that Ocwen had breached the Agreement by failing to perform in numerous respects.[1]  Specifically, Delmar claims that Ocwen failed to initiate timely foreclosures, used an inadequate service platform, violated regulatory rules, and committed a variety of other operational errors that caused Delmar to incur losses.  In October 2018, Delmar amended its complaint to add tort claims of fraudulent misrepresentation (count II), fraudulent omission (count III), and negligent misrepresentation (count IV), asserting that Ocwen knew before signing the Agreement that it would be unable to perform due to massive systemic deficiencies and resultant regulatory sanctions.

As relevant to these additional claims, Delmar's complaint sets forth the following chronology of Ocwen's regulatory problems.  In 2011, Ocwen signed an agreement with the New York State Department of Financial Services requiring Ocwen to adhere to applicable industry regulations.  After failing to comply, in December 2012, Ocwen signed a consent order imposing two years of compliance monitoring by an independent compliance manager, which began in July 2013.  According to Ocwen's Form 10-Q for the quarter ending September 30, 2013, Ocwen was "subject to a number of pending federal and state regulatory investigations."  In December 2013, just days before Ocwen signed the Subservicing Agreement with Delmar, the compliance manager retained in the

---

[1] Delmar's original petition also asserted theories of breach of implied duty of good faith and fair dealing (count II) and negligence (count III).  This Court granted Ocwen's motion to dismiss those counts.  ECF No. 18.

New York State matter reported that Ocwen's technology systems and personnel were inadequate and ineffective, causing a backlog of over 400,000 loans. Around the same time, Ocwen was sued by the Consumer Financial Protection Bureau (CFPB) and forty-eight states, including New York and Missouri, citing 17 unfair or deceptive practices in violation of consumer financial protection laws. Ocwen submitted to a consent judgment in that suit on December 16, 2013.

Delmar pleads that Ocwen was aware of these problems when it negotiated the Agreement and thus knew that it was incapable of performing thereunder, both during negotiations in 2013 and upon execution of the Agreement January 1, 2014, thereby fraudulently inducing Delmar to enter into it. Delmar further pleads that it relied on Ocwen's representations of its ability to perform and was unaware of their falsity.

Ocwen filed the present 12(b)(6) motion seeking dismissal of counts II-IV on the bases that: (1) Delmar's tort claims are not cognizable because they merely duplicate its breach of contract claim; (2) Delmar's pleadings are not sufficiently specific to satisfy the heightened standards of Rule 9(b); (3) with respect to count III (fraudulent omission), Ocwen had no duty to disclose its circumstances to Delmar before execution of the Agreement; and (4) with respect to count IV (negligent misrepresentation), the parties bargained at arm's length and had no special relationship giving rise to a duty, and Delmar's claim is barred by the doctrine of economic loss.

## DISCUSSION

### Rule 12(b)(6) pleading standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Arthur v. Medtronic, Inc.*, 123 F. Supp. 3d 1145, 1148 (E.D. Mo. 2015). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679. The court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

### Delmar's tort claims are independent.

First, Ocwen asserts that Delmar's tort claims must be dismissed because they merely duplicate its breach of contract claim. Under New York law, "parallel fraud and contract claims may be brought if the plaintiff: (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). New York distinguishes between a

4

promissory statement of what will be done in the future, which gives rise only to a breach of contract cause of action, and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement. *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007). "A misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty." *Id*. The fact that the alleged misrepresentations also establish a breach of the contractual representations and warranties does not alter the result. *Id*. "A warranty is not a promise of performance, but a statement of present fact." *Id*. A fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, i.e., when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract." *First Bank of Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 291 (N.Y. App. Div. 1999). "By contrast, a cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract." *Id*. "For example, if a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's breach of contract claim." *Id*. at 291-92.

Applying these principles to Delmar's complaint, the Court concludes that Delmar's tort claims are not redundant to its breach of contract claim. Delmar centrally pleads that, in negotiations leading up to and at the time of execution of the Agreement, Ocwen misrepresented or omitted then-present facts as to its technological and

5

operational capacity to perform the Agreement in order to induce Delmar to enter into it. Though Ocwen asserts that Delmar's claims are redundant because they involve assurances encompassed in the representations and warranties section of the Agreement, "it is of no consequence that some of the allegedly false representations are also contained in the agreements as warranties and form a basis of the breach of contract claim." *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 294 (N.Y. App. Div. 2011). "It simply cannot be the case that any statement, no matter how false or fraudulent or pivotal, may be absolved of its tortious impact simply by incorporating it verbatim into the language of a contract." *Id*. (citing *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 303 (E.D.N.Y. 2002)). Delmar sufficiently pleads that it was induced to enter into the Agreement based on Ocwen's alleged misrepresentation or omission of then-present facts, not merely Ocwen's promise of future performance.[2]

**Delmar's pleadings satisfy Rule 9(b).**

Rule 9(b) requires that averments of fraud be pleaded with particularity. "When pleading fraud, a plaintiff cannot simply make conclusory allegations." *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir. 1997). "To satisfy the requirements of Rule 9(b), the pleadings should contain allegations concerning the time, place, and contents of the alleged fraud; the identity of the person allegedly committing fraud; and what was given

---

[2] Ocwen also asserts that Delmar's claims are redundant in that they seek the same damages as the breach of contract claim. The Court need not address this argument, as the *Bridgestone* test requires only one of the three possible theories of independence. *See e.g., Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 198 (S.D.N.Y. 2011) (observing the either/or nature of the *Bridgestone* prongs and rejecting the first and third).

up or obtained by the alleged fraud." *Id*. In other words, the complaint must identify the "who, what, where, when and how" of the alleged fraud. *Arthur v. Medtronic, Inc.*, 123 F. Supp. 3d 1145, 1149 (E.D. Mo. 2015). A plaintiff need not necessarily plead all of these factors but must plead enough so that its pleadings are not merely conclusory. *Roberts*, 128 F.3d 647 at n. 5. The special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage in the case, to potentially damaging allegations. *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001).

Applying the heightened pleading standard here, the Court is satisfied that Delmar's claims are pleaded with the requisite particularity. Delmar pleads the who (Ocwen), what (misrepresentations and material omissions as to its ability to perform the Agreement), when (in the weeks leading up to and on the day of execution of the Agreement), how (in negotiations and in the Agreement), and why (to induce Delmar to enter the Agreement). This is sufficient to apprise Ocwen of the nature of the claim and the acts in question. Though Ocwen argues that these allegations are insufficient because they fail to identify specific dates, locations, or individual sources of the alleged misrepresentations and omissions, Rule 9(b) does not require such a granular level of specificity with respect to every question. "The level of particularity required depends on, *inter alia*, the nature of the case and the relationship between the parties." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). *See American*

7

*Traffic Solutions, Inc. v. B & W Sensors, LLC*, 4:13CV0229 AGF, 2014 WL 1272509 (E.D. Mo. Mar. 27, 2014) (rejecting argument that pleadings were insufficient for lack of specific dates and individuals); *Butano v. Wells Fargo, N.A.*, 4:13CV1652HEA, 2014 WL 3384733 at *5 (E.D. Mo. July 10, 2014) (finding sufficient a complaint pleading that a corporate defendant falsely promised a loan modification through written and oral communications on two occasions); *Ozark Mgmt. Inc. v. Spare Backup, Inc.*, 08-04006-CV-C-NKL, 2008 WL 539311, at *2 (W.D. Mo. Feb. 26, 2008) (finding sufficient a complaint pleading that a corporate plaintiff represented verbally and in writing on the date of the contract that its aircraft was fit for use).

Moreover, documents attached to Delmar's complaint do provide some details. The CFPB consent judgment was signed by Ocwen's executive vice president and general counsel on December 16, 2013, reflecting Ocwen's knowledge of its operational impairments in the days preceding execution of the Agreement. The Agreement itself, memorializing the allegedly false misrepresentations, is dated January 1, 2014 and bears the signature of Ocwen's treasurer. Although Delmar has not pleaded a specific location, "given the nature of the case and the relationship between the parties, it is understood that the representations were made during the formation of the contract, which satisfies the where requirement." *Ozark Mgmt.*, 2008 WL 539311 at *2. Additional details surrounding negotiations leading up to execution can be ascertained in discovery. Even applying the heightened pleading requirements of Rule 9(b), the Court concludes that Ocwen has sufficient notice of the factual basis of Delmar's claims to respond to the complaint.

**Delmar has sufficiently pleaded fraudulent omission**.

Next, Ocwen asserts that Delmar's claim of fraudulent omission fails because Ocwen had no duty to disclose any information to Delmar. "A cause of action for fraudulent concealment requires … an allegation that the defendant had a duty to disclose material information and that it failed to do so." *P.T. Bank Central Asia v. ABN AMRO Bank N.V.*, 301 A.D.2d 373, 376 (N.Y. App. Div. 2003). "A duty to disclose arises where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." *Id*. at 378. This "special facts" doctrine requires a plaintiff to show that the material fact was peculiarly within the defendant's knowledge and could not have been discovered through the exercise of ordinary intelligence. *Jana L. v. W. 129th St. Realty Corp.*, 22 A.D.3d 274, 278 (N.Y. App. Div. 2005).

Ocwen essentially argues that its operational deficiencies were made public in the CFPB consent judgment in December 2013, so Delmar should have discovered them on its own rather than relying on Ocwen's affirmative representations in negotiations and in the Agreement. The Court rejects this argument as a basis for dismissal on the pleadings. While some information may have been revealed in the CFPB consent judgment published just *days* before execution of the Agreement (i.e., undoubtedly *after* Delmar's formal due diligence process), factual determinations as to what more Ocwen knew and what Delmar should or could have ascertained are premature at the dismissal stage. *See P.T. Bank*, 301 A.D.2d at 378 (denying dismissal where plaintiff alleged affirmative misrepresentations of value and concealment of erroneous appraisal).

The cases cited by Ocwen do not prescribe dismissal here. For example, Ocwen cites *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 367 (N.D.N.Y. 2013), for the proposition that mere silence does not constitute fraudulent concealment. There, the defendant seller refused to respond to environmental due diligence and did not disclose that the property was in a floodplain. The court found no duty of disclosure because the defendant made no affirmative representation and the plaintiff could have discovered the condition independently, so dismissal was appropriate. That is not the case here. Delmar pleads that Ocwen affirmatively misrepresented its capabilities – e.g., by expressly representing that no litigation was pending that could have an adverse effect on the transactions contemplated in the Agreement – and that Ocwen knowingly concealed its severe operating deficiencies during the parties' negotiations and at signing. Other cases cited by Ocwen are equally inapposite. *See Apthorp Associates, LLC v. 390 W. End Associates, L.L.C.*, 2009 WL 613606 (N.Y. Sup. Ct. March 6, 2009) (building sold "as is"); *Austin v. Albany Law Sch. of Union Univ.*, 957 N.Y.S.2d 833 (N.Y. Sup. Ct. 2013) (no duty to clarify law school employment data); *Jana L.*, 22 A.D.3d 274 (absence of duty determined on full summary judgment record).

The Second Circuit considered a fraudulent inducement claim involving contractual representations and warranties in *Merrill Lynch v. Allegheny Energy*. 500 F.3d 171. That case involved the sale of a subsidiary from Merrill to Allegheny pursuant to an asset purchase agreement. In its fraud claim, Allegheny alleged that Merrill misrepresented the financial condition of the subsidiary and knowingly concealed suspect practices by the subsidiary's chief executive officer, while the agreement contained

10

representations and warranties whereby Merrill confirmed the accuracy and propriety of the subsidiary's accounting practices. The district court granted Merrill's motion to dismiss, reasoning that Allegheny "could have discovered the truths" through further due diligence. *Id*. at 181. The Second Circuit reversed. While recognizing that New York courts are skeptical of claims of reliance as between sophisticated business entities, the *Merrill* court looked to the content of the parties' agreement as a relevant factor in assessing justifiable reliance and concluded that the "warranties contained in [the agreement] … imposed a duty on Merrill Lynch to provide accurate and adequate facts and entitled Allegheny to rely on them without further investigation or sleuthing." *Id*. "Merrill Lynch's warranties in effect represent contractual stipulations that the facts covered by them be treated as information exclusively within Merrill Lynch's knowledge." *Id*. at 181-182. Though reversing dismissal, the court cautioned that, on remand, Allegheny would be required to prove that its reliance was not blind. Applying *Merrill* here, the Court finds Delmar's pleadings of fraudulent omission sufficient to survive a motion to dismiss. Whether Delmar's reliance was justified based on all circumstances is a fact question for another day.

**Delmar's claim of negligent misrepresentation must be dismissed.**

Finally, Ocwen contends that Delmar fails to state a claim for negligent misrepresentation because (1) the Agreement was an arms-length commercial transaction and (2) Delmar seeks only economic loss. This Court previously dismissed Delmar's claim of negligence because professional loan servicers do not owe an independent duty of care to loan providers. ECF No. 18. *Delmar Fin. Co. v. Ocwen Loan Servicing, LLC*,

representations and warranties whereby Merrill confirmed the accuracy and propriety of the subsidiary's accounting practices. The district court granted Merrill's motion to dismiss, reasoning that Allegheny "could have discovered the truths" through further due diligence. *Id*. at 181. The Second Circuit reversed. While recognizing that New York courts are skeptical of claims of reliance as between sophisticated business entities, the *Merrill* court looked to the content of the parties' agreement as a relevant factor in assessing justifiable reliance and concluded that the "warranties contained in [the agreement] … imposed a duty on Merrill Lynch to provide accurate and adequate facts and entitled Allegheny to rely on them without further investigation or sleuthing." *Id*. "Merrill Lynch's warranties in effect represent contractual stipulations that the facts covered by them be treated as information exclusively within Merrill Lynch's knowledge." *Id*. at 181-182. Though reversing dismissal, the court cautioned that, on remand, Allegheny would be required to prove that its reliance was not blind. Applying *Merrill* here, the Court finds Delmar's pleadings of fraudulent omission sufficient to survive a motion to dismiss. Whether Delmar's reliance was justified based on all circumstances is a fact question for another day.

**Delmar's claim of negligent misrepresentation must be dismissed.**

Finally, Ocwen contends that Delmar fails to state a claim for negligent misrepresentation because (1) the Agreement was an arms-length commercial transaction and (2) Delmar seeks only economic loss. This Court previously dismissed Delmar's claim of negligence because professional loan servicers do not owe an independent duty of care to loan providers. ECF No. 18. *Delmar Fin. Co. v. Ocwen Loan Servicing, LLC*,

4:18CV00208 AGF, 2018 WL 1942218 (E.D. Mo. Apr. 25, 2018) (citing *Commerce Bank v. U.S. Bank Nat'l Ass'n*, 4:13-CV-00517-BCW, 2015 WL 9488397 (W.D. Mo. Sept. 30, 2015)). Delmar's claim of negligent misrepresentation fails for a similar reason.

"[T]o properly state a negligent representation claim in a commercial setting, a plaintiff must demonstrate that the defendant possesses unique or specialized expertise or is in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Wells Fargo Bank, N.A. v. HoldCo Asset Mgmt., L.P.*, 16-CV-6356 (KBF), 2017 WL 2963501, at *19 (S.D.N.Y. July 11, 2017), *aff'd*, 729 Fed. Appx. 124 (2d Cir. 2018). The claim requires a showing of a special relationship that "creates a duty for one party to impart correct information to another." *MBIA*, 87 A.D.3d at 296. A defendant's "superior knowledge of the particulars of its own business practices is insufficient to sustain the cause of action." *Id.* at 297.

Delmar acknowledges these principles but argues that the nature of the parties' relationship is a question of fact not appropriate for determination at the dismissal stage, citing *Kimmell v. Schaefer*, 675 N.E.2d 450 (N.Y. 1996). *Kimmell* involved a chief financial officer who used his unique knowledge of a business to induce individuals to invest. The present case, however, is more analogous to *MBIA*, involving two sophisticated entities in the mortgage loan business. Although MBIA's fraud claim survived as it does here, its negligent misrepresentation claim was properly dismissed for lack of a special relationship. *MBIA*, 87 A.D.3d at 297. Likewise in this case, Delmar's complaint cannot reasonably be read to assert or imply the existence of a unique

relationship between the parties giving rise to a duty.  As such, count IV must be dismissed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss is **GRANTED** as to count IV and **DENIED** as to counts II and III.  ECF No. 51.

**IT IS FURTHER ORDERED** that Plaintiff's motion for oral argument on Defendant's motion is **DENIED as moot**.  ECF No. 57.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 10th day of May, 2019.